**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALVIN REINAUER, | |
| Plaintiff, | Case No.: 1:25-cv-14132 |
| v. | Hon. Virginia M. Kendall |
| UNITED AIRLINES, INC., | |
| Defendant. | |

**<u>UNITED AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

United established in its Motion to Dismiss that Reinauer's Title VII failure-to-accommodate and retaliation claims are time-barred; his retaliation claim independently fails to state a valid theory of relief; and he cannot advance any interactive process or ADA claim. Reinauer explicitly concedes he lacks any ADA claim and implicitly concedes (by waiver) any interactive process claim. Otherwise, Reinauer's response ignores controlling case law and rehashes old arguments United already debunked in its Motion to Dismiss. The Complaint should be dismissed for three reasons:

*First*, Reinauer's Title VII claims are time-barred because his EEOC charge solely involves conduct more than 300 days before he filed his charge. Reinauer improperly relies on the ongoing consequences of a discrete act to claim a "continuing violation." This argument has been universally rejected, and his authorities either do not involve a failure-to-accommodate claim or contradict his position by demonstrating, as this Court has ruled, that an employer's accommodation decision is a discrete act that starts the running of the 300-day limitation period. *See, e.g.*, <u>*Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130 (2d Cir. 2003)</u> (cited in <u>Opp. at 8</u>) (applying the Supreme Court's *Morgan* and *Bazemore* decisions to hold that an employer's decision on an "accommodation for religious practices does not give rise to a continuing

violation"); _Dooley v. Abbott Labs._, 2009 WL 1033600, at *6 (N.D. Ill. Apr. 17, 2009) (Kendall, J.) (explaining that courts treat the accommodation decision "as a discrete discriminatory act that triggers the 300 day limitations period"). Nor did Reinauer restart the limitations period by making a follow-up communication to "confirm" his accommodation; otherwise, all Title VII claimants could unilaterally extend the congressional limitations period in perpetuity.

_Second_, Reinauer's appeal to distinguishable out-of-circuit authority cannot salvage his retaliation claim. In addition to impermissibly duplicating his failure-to-accommodate claim, Reinauer's retaliation claim suffers from a core conceptual error that leaves him without a materially adverse action. Namely, Reinauer argues that he was treated worse than other United employees, yet fails to isolate the correct independent variable to test whether United retaliated against him because of his accommodation request. _See_ Opp. 15 (comparing his treatment to that of an "unvaccinated pilot _already flying_ for United _with an accommodation_, [or to] . . . a _vaccinated pilot_ [who did not need an accommodation]" (emphasis added)). But when United's treatment of Reinauer is compared to the treatment of individuals "directly comparable to [Reinauer] in all material respects," _Bio v. Fed. Express Corp._, 424 F.3d 593, 597 (7th Cir. 2005)—i.e., unvaccinated pilots who did not request an accommodation and were prospective new hires— Reinauer was indisputably treated _better_, not worse.

_Third_, all parties agree that no ADA claim can proceed. Reinauer also ignored United's argument that no standalone interactive process claim is viable under Title VII or the ADA. The Court should hold that Reinauer cannot proceed on any such claims.

Reinauer cannot salvage his claims by criticizing "United's reading of certain facts" or appealing to the possibility that discovery will vindicate his position (Opp. 4, 13-14). A motion to dismiss does not ask whether facts are disputed or what discovery might reveal; it asks whether

2

the facts alleged, accepted as true, state a plausible claim for relief. Even taking Reinauer's allegations in the light most favorable to him, his claims fail as a matter of law. The applicable 300-day limitations period, the settled rule that accommodation decisions are discrete acts, and the absence of any cognizable retaliation theory are legal issues that no discovery could cure.

## ARGUMENT

### I.      All of Reinauer's Title VII Claims are Time-Barred.

None of Reinauer's arguments as to timeliness is new. In its opening motion in this Court, United addressed and rebutted each of these arguments, while noting that Reinauer previously had advanced these same mistaken assertions in the Florida briefing before transfer. *See* Mot. 7-8 (citing ECF No. 26). This Court should reject these rehashed arguments under Supreme Court and Seventh Circuit authorities.

### A.      Reinauer's Reliance on the Continuing Violation Doctrine to Revive his Stale Claims Is Misplaced.

The relevance of the April 4, 2022 date is uncontroverted. United has consistently argued that April 4, 2022 was the date of a discrete act that started the running of the 300-day clock for Reinauer to file a charge of discrimination because it was the date of United's single decision to accommodate Reinauer's religious accommodation request by allowing him to be hired as a pilot with a delayed start date. After April 4, 2022, United made no further decisions with regard to Reinauer's accommodation request. Reinauer argues (Opp. 5) that April 4, 2022 was the date that United "began discriminating against him" because that was when "he was denied a reasonable accommodation to begin working." Recognizing that using the April 4, 2022 date as a discrete act is fatal for timeliness, Reinauer improperly seeks to rely on the continuing violation doctrine to claim that the full period before he voluntarily took the COVID vaccine and began new-pilot training was a "period of discrimination" and the time for filing a charge did not begin until that

period ended. Compl. ¶¶ 73–74; *see* Opp. 5.

*First*, Reinauer cannot claim that any "ongoing harm" or "injury" he suffered within the limitations period is a continuing violation. *See* Opp. 6-8. As United has already shown (Mot. 7-8), and Plaintiff fails to address in his opposition, a Title VII plaintiff cannot rely "upon the effects of earlier employment decisions" to extend the timeline for filing a charge of discrimination, *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980), and "the fact that the injury continues to exist does not extend the deadline to file a complaint." *Bernard v. Scott*, 501 F. Supp. 3d 611, 621 (N.D. Ill. 2020). When "[d]etermining whether a plaintiff suffers the consequences of a past violation or the persistent recurrence of fresh violations, courts focus on 'what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring.'" *EEOC v. R.R. Donnelly & Sons, Inc.*, 792 F. Supp. 56, 58 (S.D. Ind. 1992) (holding there is no continuing violation because the adoption of an accommodation policy was a clear event that should have alerted plaintiff of the alleged discrimination). Here, Reinauer knew United's accommodation decision on April 4, 2022, and had 300 days from then to file a charge of discrimination if he perceived discrimination was occurring.

*Second*, Plaintiff rehashes his prior briefing (which United already addressed, *see* Mot. at 8; ECF No. 26 at 15), by relying on the Supreme Court's decision in *Bazemore v. Friday*, 478 U.S. 385 (1986). *Bazemore* involved a claim for a racially "discriminatory salary structure," in which each paycheck was a new act of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002). Here, in contrast, the sole alleged act of alleged discrimination (and retaliation) was United's accommodation decision—a single decision made on April 4, 2022. Plaintiff's reliance on *Bazemore* fails: when an employer chooses to pay an employee in a discriminatory or retaliatory manner, each payment may be a discrete act as in *Bazemore*, but here,

United did not make any new decisions or take any new actions after April 4, 2022. *See Donnelly,* 792 F. Supp. at 58 (rejecting plaintiff's *Bazemore* analogy because the "adoption of the accommodation policy, not each application of that accommodation, was the relevant act that triggered the statute of limitations"). Plaintiff's creative framing that after April 4, 2022, he "functionally" received a $0 paycheck—which he did not literally receive—would turn *every* Title VII termination or refusal-to-hire case into an evergreen claim with no end date, even though those decisions, like reasonable accommodation decisions, are "easy to identify" as "discrete acts." *Morgan*, 536 U.S. at 114. That is not the law.

Tellingly, Plaintiff does not (and cannot) cite a single failure-to-accommodate case holding that the continuing violations doctrine applies or applying *Bazemore* to make an analogous claim timely.[1] Indeed, the *only* reasonable accommodation holding that Reinauer does cite, *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130 (2d Cir. 2003), explicitly rejects his argument. The *Elmenayer* court held that "an employer's rejection of an employee's proposed accommodation for religious practices *does not give rise to a continuing violation*," and explicitly rejected the *Bazemore* comparison. *Id.* at 134-35 (emphasis added). That court stated, "[o]nce the employer has rejected the proposed accommodation, no periodic implementation of that decision occurs, comparable to the weekly cutting of a payroll check in *Bazemore.* . . . Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer,

---

[1] *See Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 119 (7th Cir. 1982) (failure to promote); *Selan v. Kiley*, 969 F.2d 560, 563 (7th Cir. 1992) (discriminatory transfer/demotion); *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 401 (6th Cir. 2025) (not a continuing violation case); *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321 (7th Cir. 2022) (not a continuing violation case); *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) (not a continuing violation case); *Bazemore v. Friday*, 478 U.S. 385 (1986) (pattern or practice of racial discrimination); *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 760 (N.D. Ill. 2020) (not a continuing violation case); *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014 (7th Cir. 2003) (gender discrimination and Equal Pay Act).

denials that *Morgan* offered as examples of a discrete act."[2] *Id.* at 135.

*Finally*, Plaintiff places significant focus on the Fifth Circuit's unpublished *Sambrano* decision, *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *7-9 (5th Cir. Feb. 17, 2022). That 2022 decision solely involved the "irreparable harm" element of the preliminary injunction standard and did not render a holding on timeliness under Title VII or any other issue relevant here. Indeed, the clearest proof that Reinauer mistakenly relies on *Sambrano* to his benefit is that, subsequent to that Fifth Circuit *Sambrano* decision, the district court in that case—which unlike this Court was bound by the Fifth Circuit's decision—dismissed several plaintiffs' claims as time-barred by holding that United's accommodation decision "was not a continuing violation, it was a discrete act." *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 674 (N.D. Tex. 2023).

## B. There Was No "Second Denial" That Constituted a New Discrete Act.

In the alternative to his flawed continuing violation theory, Plaintiff rehashes a fallback argument that United already addressed (Mot. 8-9). Reinauer claims (based on his EEOC charge) that he contacted United in July 2022 to "confirm" that he still had a job, and a "confirmation was emailed to [him] on July 26, 2022." Opp. Ex. 1 at 2; ECF No. 50-1, Craig Decl. at 10-11; *see* Opp. 5, 10. As United has explained, unrebutted, this type of routine follow-up communication to confirm an employer's earlier decision does not create a "fresh act of discrimination." *See Platt v.*

---

[2] Reinauer also cites *Elzeftawy* but this case does not concern the continuing violation doctrine and, if anything, supports United's timeliness arguments because it is only cited for the purpose of demonstrating that an adverse employment action occurred when the plaintiff stopped getting paid at the conclusion of his medical leave. 477 F. Supp. 3d at 764. Even if *Elzeftawy* could be extrapolated to the context of a continuing violation, it would only show that the discrete act occurred when plaintiff "stopped getting paid," and would not suggest that the entire time that plaintiff was not paid thereafter was a continuing violation. *Id.* It is the act of "[d]iminishing an employee's compensation" that is the "adverse employment action," *see id.*, and similarly here, the only act that caused the alleged "$0 per pay period" was United's accommodation decision on April 4, 2022.

*Chicago Transit Auth.*, 2019 WL 5393995, at *3 (N.D. Ill. Oct. 22, 2019) (for discrete acts, "[t]he limitations period begins on the date of the adverse employment action"); *Muckenfuss v. Tyson Fresh Meats, Inc.*, 581 F. Supp. 3d 1114, 1119 (N.D. Ind. 2022) ("a company's refusal to reconsider its previous denial of an accommodation request doesn't restart the clock") (citing *Teague v. Northwestern Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012)). Even "[m]ere requests to reconsider . . . cannot extend the limitations period[]." *Ricks*, 449 U.S. at 261 & n.15. Reinauer fails to address any of these authorities, which conclusively establish why his follow-up communication cannot restart the timeliness clock. Were Reinauer's position correct, a discrimination claimant could repeatedly contact his employer to "confirm" an earlier decision, perpetually extending the limitations period at his discretion. Accordingly, only the April 4, 2022 date can be used to assess timeliness.[3]

## II. Reinauer's Response on Retaliation Does Not Support Denying This Motion.

In addition to being time-barred, Plaintiff's retaliation claim should be dismissed for three independently sufficient reasons: (1) the claim is duplicative of his failure-to-accommodate claim, (2) he fails to allege protected oppositional conduct, and (3) he fails to allege materially adverse treatment. None of Reinauer's responses (Opp. 11-16) saves this claim from dismissal.

### A. Reinauer's Retaliation Claim is Duplicative of His Accommodation Claim.

United established in its Motion (at 10) that Reinauer's retaliation claim is barred as duplicative of his failure-to-accommodate claim under authorities from this Court. Reinauer responds (Opp. 12) that retaliation claims can sometimes "overlap" with failure-to-accommodate claims, but he ignores the pertinent authority from this Court and relies on distinguishable out-of-circuit cases that do not involve duplicative failure-to-accommodate and retaliation claims. First,

---

[3] Plaintiff's speculation about potentially substituting a different plaintiff (Opp. 11 n.4) is not before the Court and does not save Reinauer's untimely claims.

while the *Davies* opinion Reinauer references indicates that plaintiff's failure-to-accommodate and retaliation claims were "intertwined," a post-trial decision from that case makes clear that the retaliation claim was not based on an accommodation the employer provided (like Reinauer's claim), but rather on that plaintiff's termination seven days after his accommodation request. *Davies By & Through Davies v. Lackawanna Cnty.*, 2018 WL 1077290, at *3 (M.D. Pa. Feb. 27, 2018) (post-trial decision). And in *Huge*, the alleged retaliatory act was placing the plaintiff on medical leave to assess potential accommodations—again, not the accommodation itself. *Huge v. Boeing Co.*, 2015 WL 6626568, at *11 (W.D. Wash. Oct. 30, 2015).

> **B.      Reinauer Did Not Engage In Protected Conduct Under Title VII.**

To avoid dismissal, Reinauer must plead facts showing that he engaged in protected conduct by "oppos[ing] [a] practice made . . . unlawful" under Title VII. 42 U.S.C. § 2000e-3(a). Here, Reinauer contends (Opp. 14) that both his initial request for accommodation and his July 22nd follow-up confirming his accommodation are protected oppositional conduct. But he is mistaken for the reasons articulated in United's opening brief (Mot. at 10-11). Reinauer again ignores United's cited case law, which establishes that "submitting religious accommodation forms [is] not an act opposing religious or racial discrimination." *Muhammad v. Chicago Transit Auth.*, 2024 WL 231436, at *2 (N.D. Ill. Jan. 22, 2024); *see also Hertog v. 1002 Sister Barbara Way Prop., LLC*, 2025 WL 1190777, at *4 (S.D. Ind. Apr. 23, 2025) (collecting cases and explaining that "simply requesting a religious accommodation, unaccompanied by anything that can be plausibly interpreted as opposition to an unlawful employment practice, is not activity protected under Title VII") (internal quotations omitted). Instead, Reinauer cites out-of-circuit cases and focuses on his July 22nd follow-up confirmation of United's earlier accommodation decision, now framing it as "when he *asked again* for a reasonable accommodation." Opp. 14 (emphasis added). But asking the same thing twice does not change the result; if Reinauer's first

8

request for accommodation from United's vaccine mandate was not protected oppositional conduct, neither was the second. Reinauer has not identified any contemporaneous statement or action (in his complaint or EEOC charge) that he made in opposition to United's accommodation policy, so his claim fails.

**C.      Reinauer Fails to Allege a Materially Adverse Employment Action Was Caused By Protected Conduct.**

Reinauer claims (Opp. 13) that "[a]t the least, United's second denial of a reasonable accommodation can be seen as retaliation even if it is assumed that the original denial cannot be." But even if Reinauer's follow-up communication was protected oppositional conduct (it is not), it is undisputed that there was no change in Plaintiff's terms and conditions of employment after his follow-up—*i.e.*, his accommodation and employment status remained the same—so there was *no adverse action* that was *caused* by his follow-up request. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (for retaliation, plaintiff needs an employment action that is "materially adverse to a reasonable employee or job applicant" such that it "could well dissuade a reasonable worker from" engaging in the asserted protected activity). Since nothing changed as a result of his follow-up, no reasonable worker could have been dissuaded from engaging in similar conduct as Reinauer.

Reinauer also contends (Opp. 15) that he "was treated not only worse than an unvaccinated pilot already flying for United with an accommodation, he was also treated worse than a vaccinated pilot . . . ." This argument fails because it isolates the wrong independent variables when assessing comparators. A comparator who is an unvaccinated, *active-employee* pilot isolates the variable of employment status (*i.e.*, active employee vs. prospective new hire), and a comparator who is a *vaccinated* pilot isolates the variable of vaccination (*i.e.*, vaccinated vs. unvaccinated); neither of those variables matter when evaluating Reinauer's retaliation claim. To determine a proper

comparator, one must isolate the relevant independent variable (here, engaging in protected activity) while leaving other key variables the same, which permits an inference that the independent variable caused the differential treatment. In other words, Reinauer must allege that he experienced a materially adverse action when compared to someone who is "directly comparable to [him] in all material respects," but who did not engage in similar protected activity. *See*, *e.g.*, *Bio*, 424 F.3d at 597; *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004). Thus, the proper comparator here is an (1) unvaccinated (2) prospective new hire—not an unvaccinated or vaccinated active-employee pilot—who did not seek an accommodation (*i.e.*, Reinauer's alleged protected activity). Here, unvaccinated applicants who did not seek an accommodation were not hired by United if they remained unvaccinated, whereas by seeking an accommodation Reinauer *was* hired and given the opportunity to fly at United while remaining unvaccinated (albeit with a delayed training start date). Hence, Reinauer was treated *better* than similarly situated comparators.

\* \* \*

For all these reasons, Reinauer fails to state a valid retaliation claim.

## III.     Reinauer Has No ADA Or Interactive-Process Claim In This Case.

Reinauer confirms (Opp. 16) that he "would not be a proper plaintiff for an ADA suit and is thus not bringing any such action here." Reinauer also ignores United's argument that no standalone "interactive process" claim exists under Title VII or the ADA, and thus any such claim is waived. *See Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (holding that waiver applies when the litigant fails to respond "to alleged deficiencies in a motion to dismiss"). The Court should therefore hold that Reinauer does not (and cannot) assert a Title VII or ADA "interactive process" claim or any claim under the ADA.

10

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: March 13, 2026                      Respectfully submitted,


/s/ *Jonathan M. Linas*

Jonathan M. Linas (Bar No. 6290055)
Jordan M. Matthews (Bar No. 6300503)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: 312.269.4245
Facsimile: 312.782.8585
jlinas@jonesday.com
jmatthews@jonesday.com

Alexander V. Maugeri (Bar No. 5062666)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212.326.3939
Facsimile: 212.755.7306
amaugeri@jonesday.com

Kristin M. Simonet (Bar No. 0399213)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Telephone: 612.217.8869
Facsimile: 312.782.8585
ksimonet@jonesday.com

**ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF filing system.

/s/ *Jonathan M. Linas*
Attorney for Defendant