THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ALVIN REINAUER, on behalf of himself and all others similarly situated, | ) ) ) ) | No. 25 C 14132 |
| *Plaintiff,* | ) ) ) | Chief Judge Virginia M. Kendall |
| v. | ) ) |  |
| UNITED AIRLINES, INC. | ) ) |  |
| *Defendant.* | ) ) ) |  |

**MEMORANDUM OPINION AND ORDER**

This religious discrimination employment dispute began during COVID-19. Plaintiff Alvin Reinauer filed a class action complaint under Title VII for religious discrimination and retaliation against Defendant United Airlines, Inc. United moves to dismiss, arguing that Reinauer's claims are time-barred and substantively deficient. (Dkt. 49). For the reasons below, the Court denies United's motion.

**BACKGROUND**

Reinauer is a Catholic pilot. (Dkt. 1, ¶¶ 8, 67). Reinauer applied to fly for United during the COVID-19 pandemic in February 2022. (Dkt. 52 at 2).[1] United offered to interview Reinauer but conditioned the interview on Reinauer being vaccinated for COVID-19. (*Id.*) In response, Reinauer submitted a religious accommodation request to not take the vaccine. (*Id.*) He alleges that his "sincerely held religious belief"—"that the elective termination of a pregnancy is wrong" and "that life is sacred from the moment of conception"—prevents him from taking the COVID-19 vaccine. (Dkt. 1, ¶ 67). Taking the vaccine would violate his "lifelong adherence to the

---

[1] The Court takes judicial notice of Reinauer's EEOC charge for purposes of this background but does not accept as true any factual content subject to reasonable dispute. *See infra* at 10-14.

1

Catholic" faith because certain COVID-19 vaccines are manufactured "using fetal stem cell lines derived from an abortion." (*Id*.) He also alleges that he "believes mRNA technology and cellular manipulation are morally objectionable to his faith and understanding of God." (*Id*.) In view of these religious beliefs, "no matter how attenuated," Reinauer alleges he is "unable to participate in or be complicit with a product derived from an abortion," and so it "would be a direct violation of his religious beliefs and conscience to take the vaccine." (*Id*.)

United granted Reinauer's accommodation request to not take the vaccine, allowing him to proceed to the interview. (Dkt. 52 at 2). The next month, United provided Reinauer a "conditional offer of employment"—conditioned on Reinauer taking a COVID-19 vaccine. (*Id.* at 3); (Dkt 1, ¶ 9). In response, Reinauer submitted a religious accommodation request on or about April 2, 2022, seeking an exception to taking the vaccine. (*Id*.) United granted this request on or about April 4, 2022. (*Id*.)

After this, United "placed [Reinauer] on an indefinite hold." (*Id*.) United was not permitting candidates "to attend training unvaccinated." (*Id*.) During this time, however, Reinauer discovered that United was "routinely" assigning "training attendance start dates" for "other new hire Pilots" that did not have "religious requests"; and so he "reapproached" United "to confirm" that he "still held a job offer and a religious accommodation process approval." (*Id*.) On July 26, 2022, United "confirmed" that Reinauer "held an approved religious request" but indicated that he was "on an indefinite hold" because United was not bringing candidates who requested accommodations to not take the vaccine onto United property for training. (*Id*.)

Reinauer alleges that United's conduct, and decision to place him on an indefinite, unpaid hold because he requested a religious accommodation request, was discriminatory and in furtherance of an express discriminatory policy that directly targeted and disparately impacted

current and prospective employees, like Reinauer, who could not take the COVID vaccine for religious reasons. (Dkt. 1). Specifically, Reinauer alleges that United engaged in a "strategic, company-wide campaign to coerce its employees to violate their religious beliefs and ignore their health." (*Id*., ¶ 2). Reinauer alleges that "United imposed this pressure campaign merely so that it could advertise a 100% vaccination" rate. (*Id*.) To further illustrate this discriminatory policy, Reinauer repeatedly cites to statements United's CEO (Mr. Kirby) made, alleging that Mr. Kirby "made clear that the masking-and-testing accommodation was intended to be excessive, as he wanted the policy to sound very serious to employees by requiring masks at all times (including outdoors) and *automatic termination* for violating the policy." (*Id*., ¶ 62) (cleaned up) (quotes omitted); (*see also id*., ¶¶ 2, 3, 29, 38, 41, 42, 57, 62). Reinauer alleges that this discriminatory policy targeted people of faith, again pointing to statements Mr. Kirby made stating that he did not believe accommodations were necessary because United employees were making up their beliefs and "'all of a sudden deciding I'm really religious.'" (*Id*., ¶ 3) (brackets omitted).

"In addition to Mr. Kirby's threats," Reinauer also alleges that, as part of United's policy, "United placed substantial and unconscionable pressure on its employees." (*Id*., ¶ 42). As one example, Reinauer alleges that "United mailed postcards to all employees who had not yet provided proof of vaccination." (*Id*.) These postcards apparently "were not sent in an envelope" so "United effectively broadcast its employees' medical information to all who saw the postcards, allowing a wide range of individuals outside United to also exert pressure on the employee." (*Id*., ¶ 43). United also treated different employees arbitrarily different, based only on religious views and vaccination status, Reinauer alleges. (*See, e.g.*, *id*., ¶¶ 44-47). For example, United "deemed 'non-customer facing'" (such as those who work in hangars) "not subject to United's arbitrary mandate." (*Id*., ¶ 47).

3

Reinauer further alleges that United retaliated against those who sought exemptions from its policy. (*See, e.g.*, *id.*, ¶¶ 4, 13, 42-43, 60, 62-63, 68, 96-101). He claims that "United designed a purposefully vague and coercive accommodation process, imposed unreasonable and arbitrary deadlines, subjected employees to hostile and invasive questions criticizing their beliefs and health, and failed to engage in any discussion with employees about their job duties or the types of accommodations that would allow the employees to continue working." (*Id.*, ¶ 4). In so doing, United allegedly "retaliate[ed] against employees who engaged in protected activity." (*Id.*, ¶ 13).

All of these events apparently took a toll on Reinauer, he faced "extreme duress to abandon" his "religious principles" and, because he "was in need of work," eventually succumbed to the pressure. (Dkt. 52 at 3); (Dkt. 1, ¶¶ 2, 13, 72-73). So, "on or about August 25, 2022," he provided United his COVID-19 vaccination documentation. (*Id.*) United provided Reinauer a "training class date of October 17, 2022." (*Id.*) About six months later, Reinauer filed his charge with the EEOC on April 27, 2023. (*Id.* at 2). The notice of the EEOC charge states that the circumstances of discrimination "are alleged to have occurred on or about 08/25/2022." (Dkt. 50-1 at 4). The EEOC provided Reinauer his right to sue on July 11, 2024. (*Id.* at 14-15).

Reinauer filed his complaint in the Middle District of Florida on October 9, 2024. (Dkt. 1). While there, United filed two motions. The first was to transfer the case to the Northern District of Illinois. (Dkt. 20). The second was to dismiss. (Dkt. 19). Reinauer opposed both motions. (Dkts. 24-26). United replied. (Dkt. 33). The U.S. District Court Middle District of Florida did not rule on the motion to dismiss; it instead transferred the action to this Court under 28 U.S.C. § 1406(a) based on improper venue. (Dkt. 34 at 4-11).

Once before this Court, the parties agreed that United's motion to dismiss (Dkt. 19) was moot. (Dkt. 47). The Court dismissed it and granted United leave to refile under Seventh Circuit law. (*Id.*) United filed its renewed motion to dismiss on February 20, 2026. (Dkt. 49).

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiff's favor." *Miao v. United Airlines, Inc.*, 164 F. 4th 622, 623 (7th Cir. 2026). The Court "[will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## **ANALYSIS**

United contends that Reinauer's Title VII claim is barred by the statute of limitations. (Dkt. 50 at 4-9). United also asserts that Reinauer's Title VII claim is substantively deficient because his retaliation and accommodation claims are duplicative (*id.* at 10); he did not allege oppositional conduct (*id.* at 10-12); and he failed to allege materially adverse treatment. (*Id.* at 12-13).[2]

---

[2] The parties agree that Reinauer did not allege an ADA claim or an interactive process claim under Title VII or the ADA. (Dkt. 50 at 13-14); (Dkt. 51 at 21). The Court therefore does not consider any such arguments.

## I. Statute of Limitations

Reinauer must satisfy two conditions to timely file a complaint for religious discrimination under Title VII. First, "[i]n a deferral state such as Illinois, a plaintiff who asserts Title VII . . . claims has 300 days from the alleged discriminatory or retaliatory act to file a timely charge of discrimination with the EEOC." *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 744 (7th Cir. 2021); *Berg v. Allied Universal Sec. Servs.*, 2026 WL 37424, at *1 (7th Cir. Jan. 6, 2026); 42 U.S.C.A. § 2000e-5(e)(1). Second, once he has notice of his right to sue from the EEOC, he must file his complaint in federal court within 90 days. *Kinder v. Marion Cnty. Prosecutor's Off.*, 132 F.4th 1005, 1008 (7th Cir. 2025). Whether Reinauer filed his EEOC charge within 300 days of the discriminatory act is the only timeliness issue in question; Reinauer filed his EEOC charge within 90 days. (Dkt. 50 at 4-9); (Dkt. 50-1 at 14); (Dkts. 51-52).

United frames Reinauer's allegations "on a single act: United's decision [on April 4, 2022,] to accommodate his religious accommodation request by allowing him to work as a pilot at United with a delayed start date." (Dkt. 50 at 6); (*see also id.* at 4-9). United claims that "the denial of a reasonable accommodation is a discrete act of discrimination." (*Id.* at 5). So, in United's view, because Reinauer's claim began to run on April 4, 2022, but "Reinauer did not file his charge until 388 days later—on April 27, 2023—all of his claims are untimely." (*Id.* at 6). Preemptively addressing Reinauer's arguments from the parties' prior briefing, United maintains that the continuing violation does not apply despite Reinauer alleging that he was "subject to an ongoing 'period of discrimination.'" (*Id.*) (quoting Dkt. ¶¶ 73-74). The "denial of a reasonable accommodation," United repeats, is a "discrete act" and so the "continuing violation doctrine does not apply." (*Id.* at 6-7). Even if this were not the case, United further contends that Reinauer's position is time-barred for three additional reasons.

6

United first asserts that Reinauer "cannot rely 'on the effects of earlier employment decisions' to extend his timeline for bringing a claim." (*Id.* at 7-8) (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). United next claims that Reinauer's ability "to disregard his own professed religious beliefs and become vaccinated does not transform United's one-time decision into an ongoing practice." (*Id.* at 8). United's third and final point is that Reinauer's July 2022 communication with United—where he reached out "to 'confirm' that he still had a job and an accommodation"—does not restart the clock and therefore "does not create a 'fresh act of discrimination.'" (*Id.* at 8-9) (citing (Dkt. 26 at 17)); (*see also* Dkt. 53).

Reinauer, on the other hand, asserts that he was subject to ongoing discrimination, not a discrete instance of discrimination, and so the continuing violation doctrine applies. (Dkt. 51). April 4, 2022 is when "United began discriminating against" him, and so he claims that United's discrimination did not end until he succumbed and submitted his vaccine paperwork on August 25, 2022. (*Id.* at 10). Starting from the date the discriminatory period ended (August 25, 2022), Reinauer maintains that his suit is timely because he filed it on April 27, 2023—"246 days after United's discrimination against Mr. Reinauer ended and 275 days after United's second formal denial of his accommodation request." (*Id.*) Reinauer stresses that "this is not a typical failure to accommodate case where there is one discrete act that results in a termination, failure to promote, denial of transfer, or refusal to hire." (*Id.* at 14) (quotes omitted).

### a. Continuing violation

A continuing violation may exist under three circumstances: where (1) "an employer makes employment decisions over time that make it difficult for the employee to determine the actual date of discrimination"; (2) the employee's claim "involves an express discriminatory policy of the employer"; and (3) "discrete acts of discrimination are part of an ongoing pattern and at least

one of the discrete acts occurred within the relevant limitations period." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). Despite the continuing violation doctrine being the focal point of the dispute and the Court giving the parties time to refile their briefs, none applies the correct standard. (Dkts. 50-53). Nevertheless, Reinauer's allegations fall under an express discriminatory policy. *Supra* at 1-5; (*see also* Dkt. 1, ¶¶ 2, 11, 35-37, 46, 62). Reinauer unequivocally alleges that United created and enforced an express corporate policy to discriminate and retaliate on the basis of religion; Reinauer identifies discrete acts that occurred under this policy, both before and after July 1, 2022,[3] including instances of United's failure to accommodate and retaliatory treatment of those who sought religious accommodations. *Supra* at 1-5; (*see also* Dkt. 1, ¶¶ 2, 11, 35-37, 46, 62).

The Court must now "consider three additional factors to determine whether a continuing violation claim is actionable: 1) whether the acts involve the same subject matter; 2) the frequency with which the acts occur; and 3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights." *Tinner*, 308 F.3d at 708. The alleged acts here involve the same subject matter: from when Reinauer applied till he received the vaccine, he alleges that United discriminated against him based on his religion. *Supra* at 1-5. Along the way, he identifies discrete instances of discrimination. (Dkt 1, ¶¶ 2, 4, 65, 68, 72, 73, 77). The timing and frequency point to a continuing violation because there were no prolonged gaps in the conduct; rather, the alleged conduct was ongoing during a six-month-period. (*See id.*); *compare with Selan v. Kiley*, 969 F.2d 560, 566-67 (7th Cir. 1992) (holding that a two-year gap between allegedly discriminatory acts could not support a continuing violation claim, even though the acts at question involved the same type of discrimination). Reinauer hurdles the last factor—

---

[3] July 1, 2022, is 300 days before Reinauer filed his complaint on April 27, 2023.

the degree of permanence—because he plausibly alleges that United put him on "indefinite" leave. (Dkt. 1, ¶¶ 2, 4, 11, 60, 77). The continuing violation doctrine applies. *Tinner*, 308 F.3d at 708.

United attempts to reduce Reinauer's allegations into just a "single act"—the April 4, 2022, decision to grant Reinauer's "religious accommodation request by allowing him to work as a pilot at United with a delayed start date." (Dkt. 50 at 6); *see also supra* at 6-7. United's position is significantly skewed, hinges on inadmissible, disputed, extrinsic evidence, and ignores most of Reinauer's complaint—including every single allegation about United's express discriminatory policy. (Dkt. 1, ¶ 2) ("United Airlines' began a strategic, company-wide campaign to coerce its employees to violate their religious beliefs and ignore their health."); (*see also id.*, ¶¶ 3, 8, 11, 13, 29-49, 56, 63, 72, 76-77, 78, 81-82, 90, 98, 100). Indeed, Reinauer alleged that "United's actions left [him] with [a] crisis of conscience creating the impossible choice of either receiving the COVID-19 vaccine—at the expense of his religious beliefs—or losing his livelihood." (*Id.*, ¶ 13); (*see also* Dkt. 51 at 6-8, 12, 14, 18). Had Reinauer alleged but a single, isolated failure to accommodate, United's position might gain more traction. He did not. Reinauer unequivocally alleged an entire coercive campaign based on United's express discriminatory policy requiring all employees to get vaccinated. *Supra* at 1-5; (Dkt. 1, §C "United's Campaign to Pressure Employees").

United's alleged discriminatory policy has faced other legal challenges. In *Sambrano v. United Airlines, Inc.*, the court found that United's policy put its employees into a "Hobson's choice": "On August 6, 2021, United mandated that all its domestic employees receive a COVID-19 vaccination, unless exempted for either religious or medical reasons. But exempted employees face[d] a Hobson's choice: Violate their religious beliefs or medical advice, or endure indefinite, unpaid leave." 2021 WL 5178829, at *2 (N.D. Tex. Nov. 8, 2021). Similarly, the Fifth Circuit

found that United's policy "actively coerc[ed] employees to abandon their convictions." *Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *9 (5th Cir. Feb. 17, 2022) ("United has presented plaintiffs with two options: violate their religious convictions or lose all pay and benefits indefinitely. That is an impossible choice for plaintiffs who want to remain faithful but must put food on the table. . . . Thus, plaintiffs are continually subjected to a coercive choice between pay and adhering to religious convictions.") (cleaned up). In one concurrence, Judge Ho detailed the difficult position United's policy put people in, asking them to "[i]magine that your employer suddenly declares that he finds one of your religious beliefs offensive," and, while "[y]our view has no economic impact whatsoever on the company," "it offends the sensibilities of the executives who populate the C-suite. So the company puts you on unpaid leave for an indefinite period of time. And the *only* way you can reclaim your job is to abandon your religious convictions—and to do so irreversibly." *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 878 (5th Cir. 2022) (Ho, J. concurrence).

### b. Judicial notice

Another overarching issue that infects several of United's positions spreads from its misapplication of the judicial notice doctrine. (Dkt. 50 at 6, n.3); (Dkt. 51 at 10, n.2). United assumes the contents in the EEOC are true and treats them as if they came straight from Reinauer's complaint. Indeed, United asserts that "Reinauer alleged in his judicially-noticeable EEOC charge that he requested a religious accommodation on April 2, 2022, and United relayed its decision to him on April 4, 2022." (Dkt. 50 at 6). While "alleged" may be fine colloquially, it is wrong legally. The contents in the EECO charge are not legal allegations but extrinsic evidence subject to Federal Rule of Evidence 201.

"A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). "In order for a fact to be judicially noticed, indisputability is a prerequisite." *Id.* (quoting *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995)). "[C]ourts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id.* (citing Fed. R. Evid. 201(b) advisory committee's note). The Court may take judicial notice of the EEOC charge. *Id.*; *see also Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018); *Williams v. City of Chicago*, 616 F. Supp. 3d 808, 814, n.2 (N.D. Ill. 2022). The Court cannot, however, accept as true the contents of the EEOC charge that are subject to reasonable dispute as true. *Gen. Elec.*, 128 F.3d at 1081; *Hennessy*, 69 F.3d at 1354; Fed. R. Evid. 201(b).

The dates—including the apparent April 4, 2022 accommodation—in the EEOC charge are subject to reasonable dispute. Fed. R. Evid. 201(b). Consider first how each date the parties fight over is described as "on or about." (*See* Dkt. 52 at 2-3). By definition, "on or about" is approximate and does not satisfy the indisputability requirement. *See Tobey*, 890 F.3d at 648; *Daniel v. Cook Cnty.*, 833 F.3d 728, 742-43 (7th Cir. 2016). Consider still the ambiguity these dates carry when read along with the second sentence of the notice that states that the "circumstances of the alleged discrimination . . . are alleged to have occurred on or about 08/25/2022." (Dkt. 50-1 at 4). This five-month disparity saps the charge of its certainty. These dates are not indisputable. *Tobey*, 890 F.3d at 648; Fed. R. Evid. 201(b).[4]

---

[4] *See also Alma Lasers, Inc. v. Thandi*, 2024 WL 3535235, at *2 (N.D. Ill. July 25, 2024) ("In order for a fact to be judicially noticed, indisputability is a prerequisite. . . . Considering the contradictory documents, the facts in the

What is more, United already faces a high bar to succeed on its affirmative defense at the pleading stage. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). "It is true that, 'if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground.'" *Id.*; (quoting *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015)). "But [the Seventh Circuit has] cautioned that this 'irregular' approach is appropriate 'only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Id.*; (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)); *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011); *Chowaniec v. City of Chicago*, 2023 WL 4234398, at *2 (7th Cir. June 28, 2023).

Far from pleading himself out of court, Reinauer does not even include the April 4, 2022, date in his allegations. (*See* Dkt. 1). The Court may not import an imprecise date of material importance from an equivocal extrinsic document into Reinauer's complaint and then resolve that ambiguity against Reinauer. *See Garcia v. City of Chicago*, 1991 WL 289204, at *1 (N.D. Ill. Dec. 23, 1991), *aff'd Garcia v. City of Chicago, Ill.*, 24 F.3d 966 (7th Cir. 1994) ("To the extent the judicially noticed facts contradict allegations of the complaint, the allegations will not be accepted

certificate are not proper subjects of judicial notice.") (quoting *Tobey*, 890 F.3d at 648); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012) ("Although a court may take judicial notice of matters of public record when ruling on a motion to dismiss, *Anderson v. Simon,* 217 F.3d 472, 474 (7th Cir. 2000), it may not take judicial notice of underlying facts that may be subject to reasonable dispute."); *Woods v. Rent-A-Ctr. Inc-764*, 2025 WL 2493980, at *1 (N.D. Ind. Aug. 28, 2025) ("Thus, while the fact that Plaintiff filed an EEOC charge is one of which this Court may take judicial notice, it is not the case that the allegations in the EEOC Charge are not subject to reasonable dispute."); *Snell-Jones v. Hertz Corp.*, 2020 WL 1233825, at *3 (N.D. Ill. Mar. 13, 2020) (same).

as true."); *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1).").

To be sure Reinauer acknowledges the April 4, 2022, date. (*See* Dkt. 50 at 6, n.5); (*see also* Dkt. 51 at 10). Even if Reinauer admitted the approximate "on or about" April 4, 2022 date, he certainly does not admit its legal significance. (*See* Dkt. 51). The Court recognizes that Reinauer's Complaint points to activity around April or May. (*See* Dkt. 1, ¶ 73) ("After waiting five months . . . Mr. Reinauer acquiesced to United's unreasonable demands [and] provided United with his vaccination documentation on August 25, 2022[.]"). This generality is insufficient to warrant dismissal when the Court must "draw all reasonable inferences in the plaintiff's favor." *Miao*, 164 F. 4th at 623; *see also Sidney*, 782 F.3d at 928.

Ultimately, United's request is an ambitious one: it asks the Court to assume the truth of an extrinsic document, resolve all inferences against the non-moving party, and then dismiss the case based on facts the plaintiff never alleged. That is not how Rule 12(b)(6) works, and it is certainly not how judicial notice works. A motion to dismiss is not a vehicle for adjudicating contested dates or weighing outside evidence. *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978) ("Where the pleadings raise a contested issue of material fact, a Rule 12(b)(6) motion must be denied."); *Cushing v. City of Chicago*, 3 F.3d 1156, 1163 (7th Cir. 1993) (holding that resolving issues of fact are "inappropriate for resolution in a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6)"); *Lovellette v. Southern R. Co.*, 898 F.2d 1286, 1291 (7th Cir. 1990) (same); *see also Bahena v. Aahil Corp.*, 2022 WL 4609620, at *3 (N.D. Ill. Sept. 30, 2022) ("The Court cannot at this early stage accept as true facts that are outside the four corners of the pleadings or draw from those facts inferences unfavorable to Plaintiff, nor are these facts the sort for which

13

judicial notice ordinarily is appropriate.") (brackets removed) (quoting *Brack v. Dart*, 2013 WL 2251741, at *3 (N.D. Ill. May 22, 2013)).

### c. Discrete act

United contends that a failure to accommodate is a discrete act and so the continuing violation cannot apply as a matter of law. (Dkt. 50 at 6-7). United's position is overstated and detached from Reinauer's allegations. *See supra* at 5-9. At any rate, in "several cases following *Tinner*, district courts recognized that the continuing violation doctrine may, under the right facts, apply to failure to accommodate claims." *Rouse v. Chicago Transit Auth.*, 2016 WL 5233591, at *8-11 (N.D. Ill. Sept. 21, 2016) (collecting cases); *Teague v. Nw. Meml Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) ("The continuing-violation doctrine . . . concerns a claim based on an ongoing policy rather than discrete acts of discrimination."); *Dooley v. Abbott Lab'ys*, 2009 WL 1033600, at *6 (N.D. Ill. Apr. 17, 2009) ("a failure to accommodate does not constitute a discrete act for purposes of the limitations period if it is a part of a continuing violation").

No amount of reframing can change the fact that Reinauer did not allege that the April 4, 2022, accommodation was the lone act that harmed him. (*See* Dkt. 1). The Court has already found the April 4, 2022, date of accommodation subject to reasonable dispute. *Supra* at 10-14. Whether April 4, 2022, carries significance is a fact question improper for the Court to decide now.

Even accepting United's position about the apparent April 4, 2022, accommodation being a discrete act at face value does not win the day because Reinauer's allegations are far broader than that and are also based on events that occurred after July 1, 2022. *See supra* at 1-5; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326, (2007) ("the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically"); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 947 (7th Cir. 2024) (the Court must "read the

14

complaint as a whole, not to parse it piece by piece to determine whether each allegation, in isolation, is plausible") (quotes omitted). Merely because Reinauer included events that precede July 1, 2022, does not render his claim untimely. "The existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Relying on *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980), United asserts that Reinauer "cannot rely 'on the effects of earlier employment decisions' to extend his timeline for bringing a claim." (Dkt. 50 at 7-8). The facts here are nothing like *Ricks*. Mr. Ricks alleged that he was denied tenure because of his national origin; yet the court dismissed his complaint because he waited too long to file. *Ricks*, 449 U.S. at 252-58. Mr. Ricks belatedly raised a continuing-violation-type-argument on appeal—that the last day of his employment triggered the limitations clock—despite scant allegations in his complaint supporting that theory. *Id.* at 258-59. The Court rejected this argument ruling that the date Delaware State College denied Mr. Rick's tenure was the operative date for statute of limitations purposes—not when he ultimately lost his job. *Id.* at 258. The Court explained that this "is so even though one of the *effects* of the denial of tenure— the eventual loss of a teaching position—did not occur until later." *Id*. By contrast, Reinauer expressly alleged an ongoing, coercive discriminatory policy that forced him into a "crisis of conscience" of making "the impossible choice of either receiving the COVID-19 vaccine—at the expense of his religious beliefs—or losing his livelihood." (Dkt. ¶ 13). This is sufficient to allege "an express discriminatory policy of the employer." *Tinner*, 308 F.3d at 707. For that reason too,

15

and those above, United's analogy of its apparent April 4, 2022, decision "granting" Reinauer's religious accommodation request to Delaware State denying Mr. Rick's tenure, is unpersuasive. (Dkt. 50 at 7-8); *see supra* at 10-14. Unlike *Ricks*, where termination was the inevitable consequence of a final tenure denial, placing an employee on indefinite leave is not a definitive decision to terminate the employment relationship. *See Morgan*, 536 U.S. at 114 (distinguishing discrete acts from prior time-barred events).

United's next argument is that Reinauer may not "recharacterize United's single accommodation decision as 'ongoing' by arguing that he could have started his daily work at any time by becoming vaccinated." (Dkt. 50 at 8). United urges the Court to make the factual determination that United only "made a single decision"—to "delay Reinauer's training and flights until the relevant international restrictions were lifted." (*Id.*) From this, United stresses that "United's one-time decision" "does not transform" merely because "Reinauer had the ability at any time to disregard his own professed religious beliefs and become vaccinated[.]" (*Id.*) The Court must accept Reinauer's allegations as true. *Bowlin v. Bd. of Directors, Judah Christian Sch.*, 167 F.4th 469, 475 (7th Cir. 2026). Reinauer alleged that after providing "United with his vaccination documentation on August 25, 2022," "United immediately provided him with a training date, thus ending the period of discrimination against him." (Dkt. 1, ¶ 73). He also alleged that "[e]very country at the time of United's refusal to allow Mr. Reinauer to work offered travelers the option of (1) negative COVID-19 test results before flying; (2) mask wearing; or (3) quarantine in lieu of vaccination." (*Id.*, ¶ 70); (*see also id.*, ¶ 69). In other words, Reinauer plausibly alleges precisely what United asks the Court to find false. The Court may not. *Berk v. Choy*, 146 S. Ct. 546, 553 (2026) ("When evaluating whether a plaintiff has stated a claim, the court . . . asks only whether

16

the complaint's factual allegations, if taken as true, state a claim to relief that is plausible on its face.").

United warns that if the Court adopts Reinauer's position, "such a rule would functionally exempt religious accommodation requests from the limitations period enacted by Congress." (Dkt. 50 at 8). United's foreboding is unfounded. Reinauer alleged that United's decision was in furtherance of its facially discriminatory policy. *Supra* at 1-5. He also alleged that United's policy was expressly aimed at individuals of faith because United doubted the sincerity of their faith—based on statements from United's CEO. *Id.* Yet, "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them ***favored treatment***, affirmatively obligating employers not to fail or refuse to hire or discharge any individual because of such individual's religious observance and practice." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (cleaned up) (emphasis added).

United's final limitations argument is that Reinauer's July 2022 communication to United to confirm if he "still had a job and an accommodation" "does not create a fresh act of discrimination" because it was "a routine communication" and "United's single accommodation decision [on April 4, 2022] was the discrete act from which Reinauer's claim accrued." (Dkt. 50 at 8). This position does not come from the face of Reinauer's complaint, but Reinauer's EEOC charge and so the Court rejects this position for the same reasons as above. (*Id.*); *see supra* at 10-14. The Court may not import disputed facts from an equivocal extrinsic document into Reinauer's complaint and then use those ambiguities against Reinauer. *Supra* at 10-14. At any rate, United's theory lacks merit. *See Morgan*, 536 U.S. at 113 ("each discrete discriminatory act starts a new clock for filing charges alleging that act").

### II. Retaliation

To survive a motion to dismiss on a retaliation claim under Title VII, Reinauer must plausibly allege that "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there was a but-for causal link between the protected activity and the adverse action." *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 896 (7th Cir. 2025). Reinauer's allegations satisfy these elements. *Id.* He sought a religious exemption; he suffered adverse employment actions in response because United put him on indefinite unpaid leave instead of paying him and letting him work; and, shortly after succumbing to the policy, United stopped discriminating against Reinauer—plausibly showing a causal link between Reinauer's religious request and United's retaliation. (Dkt. 1); *Napier*, 137 F.4th at 896.

United's lead argument is that the Court must dismiss Reinauer's retaliation claim because it is "duplicative" of his failure to accommodate claim. (Dkt. 50 at 10). United contends that Reinauer provided "no factual allegations to support any adverse action by United, apart from his dissatisfaction with the accommodation he received." (*Id.*) United cites no controlling or persuasive authority for this position. (*Id.*) At any rate, Reinauer sufficiently alleged distinct factual content to show both retaliation and failure to accommodate. (*See, e.g.*, Dkt. 1, ¶¶ 3, 13-14, 33-34, 39-41, 60, 62-63).

United next asserts that Reinauer's claim must fail because he never "opposed" United's policy. (Dkt. 50 at 10-11). A "plaintiff need not . . . have opposed an action that in fact violated Title VII to win a retaliation claim. . . . All that is required is that she reasonably believed in good faith that the practice she opposed violated Title VII." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (quotes omitted); *Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 660-61 (7th Cir. 2021) ("we have 'repeatedly held that a plaintiff need not . . . have opposed an action that in

18

fact violated Title VII'") (quoting *Fine*, 305 F.3d at 752); *Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024). "[W]hat matters is whether the record supports the plaintiff's objectively reasonable belief that the employer discriminated against him." *Anderson v. Am. Foods Grp. LLC*, 2026 WL 161340, at *3 (7th Cir. Jan. 21, 2026). Reinauer's complaint satisfies these requirements. (*See* Dkt. 1); *supra* at 1-5. At any rate, Title VII is broad and the term "oppose" carries its ordinary meaning and applies where "someone . . . has taken no action at all to advance a position beyond disclosing it." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (rejecting strict definition of "oppose" for a retaliation claim). Reinauer satisfies this threshold: he alleged that he refused to comply with the policy by waiting months without getting vaccinated until he eventually succumbed. *Supra* at 1-5.

United's next argument is that Reinauer's retaliation claim must fail because "he has not pleaded . . . a materially adverse action taken by United." (Dkt. 50 at 12). "An 'adverse employment action is some quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment that is more than a mere subjective preference.'" *Paterakos v. City of Chicago*, 147 F.4th 787, 796 (7th Cir. 2025) (quoting *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 470 (7th Cir. 2018)). "The words 'terms' and 'conditions' cover more than economic or tangible injuries." *Id.* (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). "They also encompass harm to an employee's 'career prospects' and 'humiliating, degrading, unsafe, unhealthy' or otherwise negative changes to an employee's work conditions." *Id.* (quoting *Madlock*, 885 F.3d at 470); *see also Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016).

Reinauer's complaint clears the required threshold. Reinauer alleges that he faced "the impossible choice of either receiving the COVID-19 vaccine—at the expense of his religious beliefs—or losing his livelihood." (Dkt. 1, ¶ 13); (*see also id.*, ¶¶ 4, 42-43, 60, 62-63, 68, 96-101).

Reinauer also alleged that United's action "cost [him] wages on the front end of his employment" as well as "valuable positions on the seniority and longevity lists that will lead to future harms in not getting certain assignments, routes, or schedules." (*Id.*, ¶ 94). No more is necessary at this stage. *See Paterakos*, 147 F.4th at 796.

Finally, United argues that Reinauer failed to "allege that United's treatment of him was 'adverse' compared to prospective employees who were unvaccinated but did *not* seek a religious accommodation" because "unvaccinated prospective employees were given conditional job offers that mandated vaccination and without which they would not be hired." (Dkt. 50 at 12). Because of this, United concludes that "[n]o reasonable employee would be dissuaded from requesting a religious accommodation by a delay in the start of his work when the alternative—forgoing the accommodation entirely—was far less favorable." (*Id.* at 12-13). First, Reinauer "is not required to identify similarly situated comparators at the pleading stage." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014); *Cox v. Calumet Pub. Schs. Dist. 132*, 180 F. Supp. 3d 556, 561 (N.D. Ill. 2016). Second, even if Reinauer were required to make these allegations, the ones he presented are sufficient. (Dkt. 1, ¶¶ 44, 46, 59, 68, 77); (*see also id.*, ¶¶ 12, 33-34, 39-40, 59-60, 62-64, 68). Third, there is no brightline rule how a party presents comparator evidence, and so Reinauer's complaint does not fail merely because his allegations differ from how United wishes the evidence was presented. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) ("The similarly situated inquiry is a flexible, common-sense comparison based on substantial similarity rather than a strict one-to-one mapping between employees.") (quotes omitted). Lastly, the Court declines to weigh the sufficiency of the evidence at this stage because "[w]hether another employee is 'similarly situated' is usually a question for the finder of fact." *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 472 (7th Cir. 2025) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012));

*Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018) ("comparisons often present factual issues for juries to decide"). While United heralds its indefinite, unpaid, leave during a global pandemic as not adverse, Reinauer alleged that it put him through a "crisis of conscience"— and *that* is the allegation the Court must accept. (Dkt. 50, ¶ 13); *Miao*, 164 F. 4th at 623.

## CONCLUSION

The Court denies Defendant's motion to dismiss. (Dkt. 49).

_____
Virginia M. Kendall
United States District Judge

Date: May 21, 2026

21